UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

LAWRENCE JENKINS,

                Plaintiff,

v.

BRENDA JAMES et al.,

                Defendants.

_____/

Case No. 2:25-cv-291

Honorable Paul L. Maloney

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. In a separate order, the Court granted Plaintiff leave to proceed *in forma pauperis*.

Under Rule 21 of the Federal Rules of Civil Procedure, a court may at any time, with or without motion, add or drop a party for misjoinder or nonjoinder. Fed. R. Civ. P. 21. Applying this standard regarding joinder, the Court will drop as Defendants Unknown Party #1, Unknown Party #2, and Binner. The Court will dismiss Plaintiff's claims against the misjoined Defendants without prejudice.

Further, under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these

standards, after dismissing the above-listed Defendants due to misjoinder, the Court will dismiss Plaintiff's complaint for failure to state a claim.

**Discussion**

**I.      Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan. The events about which he complains, however, occurred at the Marquette Branch Prison (MBP) in Marquette, Marquette County, Michigan. Plaintiff sues the following MBP staff: LPN Supervisor Brenda James, LPN Jennifer Racine, LPN Andrew Wiseman, LPN Unknown Party #1, LPN Unknown Party #2 and Corrections Officer (CO) Binner. (Compl., ECF No. 1, PageID.4–5.) Defendants are sued in their individual capacities. (*Id*., PageID.5.)

On September 17, 2024, Plaintiff alleges that Defendant Racine "administered a liquid-based medication to Plaintiff."[1] (*Id*., PageID.5.) As Plaintiff swallowed the medication, he "noticed that it had a different taste . . . than his usual medication." (*Id*., PageID.5–6.) Plaintiff notified Defendant Racine that his medication tasted different. (*Id*., PageID.6.) Defendant Racine "checked the name and cell number on the cup lid and stated that it was, in fact, someone else's medication." (*Id*.) Defendant Racine told Plaintiff she "messed up, bad." (*Id*.) Then, on July 6, 2025, Defendant Wiseman administered Plaintiff's morning medications and "gave Plaintiff, yet again, another inmate's medications." (*Id*.) Plaintiff alleges that the incorrect medications caused him stomach pain, headaches, increased vision loss, and high blood pressure. (*Id*., PageID.7–8.) Plaintiff further

---

[1] In this opinion, the Court corrects the punctuation, spelling, and capitalization in quotations from Plaintiff's complaint.

claims that while some of the symptoms have subsided, he still feels nauseated and has migraine headaches. (*Id*., PageID.8.)

Approximately two months later, on September 8, 2025, Plaintiff was bitten by a brown recluse spider. (*Id*., PageID.6.) Plaintiff "notified [Defendants Unknown Parties #1 and #2], who didn't bother to even examine Plaintiff." (*Id*., PageID.6–7.) Defendants Unknown Parties #1 and #2 told Plaintiff it was "just a little bug bite; deal with it." (*Id*.) On an unspecified date and time, Plaintiff showed the bite to a non-party nurse and non-party doctor while they were on their "general rounds." (*Id*., PageID.7.) Plaintiff was then "rushed" to the local hospital for treatment. (*Id*.) Plaintiff alleges that he was "vomiting blood and stomach acids and had a skin graft on the spider bite area." (*Id*., PageID.8.) While at the hospital, Defendant Binner had Plaintiff's handcuffs "on so tight that it was cutting off Plaintiff's circulation and causing tearing of the skin." (*Id*., PageID.7.)

Based on the foregoing allegations, Plaintiff avers that the Defendants were deliberately indifferent to his health conditions and pain under the Eighth Amendment and violated state tort laws. (*Id*., PageID.8–9.) In his request for relief, Plaintiff seeks declaratory relief and monetary damages. (*Id*., PageID.9–11.)

## II.  Misjoinder

### A.  Joinder

Federal Rule of Civil Procedure 20(a) limits the joinder of parties in a single lawsuit, whereas Federal Rule of Civil Procedure 18(a) limits the joinder of claims. Rule 20(a)(2) governs when multiple defendants may be joined in one action:

> [p]ersons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action.

3

Fed. R. Civ. P. 20(a)(2). Rule 18(a) states: "A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party." Fed. R. Civ. P. 18(a).

Courts have recognized that, where multiple parties are named, as in this case, the analysis under Rule 20 precedes that under Rule 18:

> Rule 20 deals solely with joinder of parties and becomes relevant only when there is more than one party on one or both sides of the action. It is not concerned with joinder of claims, which is governed by Rule 18. Therefore, in actions involving multiple defendants Rule 20 operates independently of Rule 18. . . .
>
> Despite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all.

7 Charles Allen Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1655 (3d ed. 2001), *quoted in Proctor v. Applegate*, 661 F. Supp. 2d 743, 778 (E.D. Mich. 2009), *and Garcia v. Munoz*, No. 08-1648, 2008 WL 2064476, at *3 (D.N.J. May 14, 2008); *see also United States v. Mississippi*, 380 U.S. 128, 142–43 (1965) (discussing that joinder of defendants is permitted by Rule 20 if both commonality and same transaction requirements are satisfied); *UWM Student Ass'n v. Lovell*, 888 F.3d 854, 863 (7th Cir. 2018) ("'Unrelated claims against different defendants belong in different suits.' . . . A district judge necessarily has considerable discretion in applying Rules 18 and 20. The rules 'operate[] independently' because Rule 20 contains limitations that Rule 18 does not, and the Rule 20 inquiry comes first." (citations omitted, brackets in original)).

Therefore, "a civil plaintiff may not name more than one defendant in his original or amended complaint unless one claim against each additional defendant is transactionally related to the claim or claims against the first defendant and involves a common question of law or fact." *Proctor*, 661 F. Supp. 2d at 778 (internal quotation marks omitted). When determining if civil rights claims arise from the same transaction or occurrence, a court may consider a variety of factors, including, "the time period during which the alleged acts occurred; whether the acts . . .

4

are related; whether more than one act . . . is alleged; whether the same supervisors were involved, and whether the defendants were at different geographical locations." *Id.* (citation omitted).

Permitting improper joinder in a prisoner civil rights action undermines the purpose of the PLRA, which was to reduce the large number of frivolous prisoner lawsuits that were being filed in the federal courts. *See Riley v. Kurtz*, 361 F.3d 906, 917 (6th Cir. 2004). The Seventh Circuit has explained that a prisoner like plaintiff may not join in one complaint all the defendants against whom he may have a claim, unless the prisoner satisfies the dual requirements of Rule 20(a)(2):

> Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that [a multi]-claim, [multi]-defendant suit produce[s] but also to ensure that prisoners pay the required filing fees—for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g) . . . .
>
> A buckshot complaint that would be rejected if filed by a free person—say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions— should be rejected if filed by a prisoner.

*George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *see also Brown v. Blaine*, 185 F. App'x 166, 168–69 (3d Cir. 2006) (allowing an inmate to assert unrelated claims against new defendants based on actions taken after the filing of his original complaint would have defeated the purpose of the three strikes provision of PLRA).

Under these circumstances, to allow Plaintiff to proceed with improperly joined claims and Defendants in a single action would permit him to circumvent the PLRA's filing fee provisions and allow him to avoid having to incur a "strike" for purposes of § 1915(g), should his misjoined claims be dismissed as frivolous or for failure to state a claim. Courts are therefore obligated to reject misjoined claims like Plaintiff's. *See Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011).

Here, Defendant Racine is the first party mentioned in Plaintiff's factual allegations. (*See* Compl., ECF No. 1, PageID.5.)[2] Plaintiff alleges that on September 17, 2024, Defendant Racine gave him the wrong medication and admitted that she erred. (*Id*., PageID.5–6.) Then, on July 6, 2025, Defendant Wiseman also gave him the wrong medication. (*Id*., PageID.6.) Plaintiff claims that Defendants Racine and Wiseman were deliberately indifferent to his health conditions, thereby violating Plaintiff's Eight Amendment rights.

Plaintiff's claims against Defendants Racine and Wiseman are separated by ten months. While the events are not proximate in time, they relate to the same risk of harm and, in deference to Plaintiff's *pro se* status, the Court will consider them as substantially similar events. Accordingly, the Court finds that Plaintiff's allegations against Defendants Racine and Wiseman involve common questions of law and fact that are properly joined for the purpose of this opinion. Additionally, although Defendant James is not named in the body of the complaint, in deference to Plaintiff's *pro se* status and reading the complaint in the light most favorable to Plaintiff, the Court will consider Defendant James to be properly joined to this action.

As to Defendants Unknown Parties #1 and #2, Plaintiff alleges that on September 8, 2025, he notified them of a brown recluse spider bite and they "didn't bother to even examine Plaintiff." (Compl., ECF No. 1, PageID.6–7.) Plaintiff was eventually taken to a hospital, vomited blood and stomach acids, and needed a skin graft. (*Id*., PageID.8.) While at the hospital, Defendant Binner applied Plaintiff's handcuffs tightly and caused injury to Plaintiff. (*Id*., PageID.7.) Plaintiff's claims against Defendants Unknown Party #1 and Unknown Party #2 arise from the Eighth

---

[2] The analysis of joinder must start somewhere. By accepting the first-mentioned Defendant and the factual allegations against the first-mentioned Defendant as the foundation for the joinder analysis, the Court is considering the issue of joinder of parties as Plaintiff has presented it in his complaint.

Amendment and challenge their medical examinations and treatment of Plaintiff's injury. Plaintiff's claims against Defendant Binner also arise from the Eighth Amendment, with regard to either his indifference to Plaintiff's wrist pain or the force used in Defendant Binner's application of the handcuffs. However, although Plaintiff's claims against Defendants Unknown Party #1, Unknown Party #2, and Binner, arise from the same constitutional amendment as his claims against Defendants Racine and Wiseman, the incidents occurred months apart, involved different Defendants, and are distinct incidents that are unrelated to Plaintiff's receipt of the incorrect medication. Plaintiff has alleged no facts that connect his claims against Defendants Unknown Party #1, Unknown Party #2, and Binner to his claims against Defendants Racine and Wiseman. The claims are remote in time and the events dissimilar. The Court finds that Plaintiff's claims against Defendants Unknown Party #1, Unknown Party #2, and Binner are not transactionally related to Plaintiff's claims against Defendants Racine and Wiseman, nor do the claims involve questions of law or fact in common. Thus, the Court concludes that Defendants Unknown Party #1, Unknown Party #2, and Binner are misjoined.

In summary, for the reasons set forth above, the Court concludes that Plaintiff's claims against Defendants Racine and Wiseman are properly joined, and the Court concludes that Plaintiff has improperly joined Defendants Unknown Party #1, Unknown Party #2, and Binner to this action.

### B.    Remedy

Because the Court has concluded that Plaintiff has improperly joined Defendants Unknown Party #1, Unknown Party #2, and Binner, the Court must determine an appropriate remedy. Under Rule 21 of the Federal Rules of Civil Procedure, "[m]isjoinder of parties is not a ground for dismissing an action." Fed. R. Civ. P. 21. Instead, Rule 21 provides two remedial options: (1) misjoined parties may be dropped on such terms as are just; or (2) any claims against misjoined

parties may be severed and proceeded with separately. *See Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 572–73 (2004) ("By now, 'it is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time . . . .'" (citation omitted)); *DirecTV, Inc. v. Leto*, 467 F.3d 842, 845 (3d Cir. 2006); *see also Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 682 (6th Cir. 1988) ("[D]ismissal of claims against misjoined parties is appropriate."). "Because a district court's decision to remedy misjoinder by dropping and dismissing a party, rather than severing the relevant claim, may have important and potentially adverse statute-of-limitations consequences, the discretion delegated to the trial judge to dismiss under Rule 21 is restricted to what is 'just.'" *DirecTV*, 467 F.3d at 845.

At least three judicial circuits have interpreted "on such terms as are just" to mean without "gratuitous harm to the parties." *Strandlund v. Hawley*, 532 F.3d 741, 745 (8th Cir. 2008) (quoting *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000)); *see also DirecTV*, 467 F.3d at 845. Such gratuitous harm exists if the dismissed parties lose the ability to prosecute an otherwise timely claim, such as where the applicable statute of limitations has lapsed, or the dismissal is with prejudice. *Strandlund*, 532 F.3d at 746; *DirecTV*, 467 F.3d at 846–47.

Plaintiff brings this action under 42 U.S.C. § 1983. For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* Mich. Comp. Laws § 600.5805(2); *Carroll v. Wilkerson*, 782 F.2d 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999). The statute of limitations begins to run when the aggrieved party knows or has reason to know of the injury that is the basis of his action. *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996).

Plaintiff's allegations against Defendants Unknown Party #1, Unknown Party #2, and Binner relate to events that occurred in September 2025. (Compl., ECF No. 1, PageID.6–7.)

Plaintiff's complaint provides no indication that the statute of limitations has or will run on Plaintiff's claims against the misjoined Defendants. Therefore, Plaintiff has provided no basis for this Court to conclude that he would suffer gratuitous harm if his claims against the misjoined Defendants are dismissed without prejudice. Accordingly, the Court will exercise its discretion under Rule 21 and drop Defendants Unknown Party #1, Unknown Party #2, and Binner because they are misjoined. The Court will dismiss Plaintiff's claims against these individuals without prejudice to the institution of new, separate lawsuit(s).[3]

### III.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer

---

[3] If Plaintiff wishes to proceed with his claims against Defendants Unknown Party #1, Unknown Party #2, and Binner, he may do so by filing a new civil action on the form provided by this Court, *see* W.D. Mich. LCivR 5.6(a), and paying the required filing fees or applying in the manner required by law to proceed *in forma pauperis*. As fully discussed in this opinion, Plaintiff is cautioned that he must limit all future actions to Defendants and claims that are transactionally related to one another. The Court may, in its discretion and without further warning, dismiss any future complaint, or part thereof, filed by Plaintiff that contains claims that are misjoined.

possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    Failure to Name Defendant James in the Body of the Complaint

Plaintiff lists Defendant James as a Defendant in this action; however, Plaintiff fails to allege any facts showing how Defendant James was personally involved in the violation of his constitutional rights. (*See generally* Compl., ECF No. 1, PageID.5–11.)

It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 555–61 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree

10

of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights).

Here, Plaintiff does not name Defendant James in the body of his complaint, nor does he refer to her title in the body of his complaint. Plaintiff's claims against Defendant James therefore fall far short of the minimal pleading standards under Rule 8 of the Federal Rules of Civil Procedure and are subject to dismissal. Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief").

Moreover, to the extent that Plaintiff seeks to hold Defendant James liable due to her supervisory position, government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).

The Sixth Circuit has repeatedly summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that

11

the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993).

Here, Plaintiff fails to allege any *facts* showing that Defendant James encouraged or condoned the conduct of her subordinates, or authorized, approved, or knowingly acquiesced in their conduct.

Accordingly, for these reasons, Plaintiff's claims against Defendant James will be dismissed for failure to state a claim.

## B.    Eighth Amendment Claims

Plaintiff alleges that Defendants Racine and Wiseman violated his Eighth Amendment rights as related to their administration of his medications on two occasions. (*See* Compl., ECF No. 1, PageID.5–11.)

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words,

12

the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.*

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

However, not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the United States Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105–06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017); *Briggs v. Westcomb*, 801 F. App'x 956, 959 (6th Cir. 2020); *Mitchell v. Hininger*, 553 F. App'x 602, 605 (6th Cir. 2014). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

13

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Perez v. Oakland Cnty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410, 411 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440–41 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, . . . he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell*, 553 F. App'x at 605 (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). The prisoner must show that the care the prisoner received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *See Miller v. Calhoun Cnty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

Plaintiff alleges that Defendants Racine and Wiseman each provided Plaintiff with the wrong medication on one occasion, ten months apart. Plaintiff fails to allege any facts that would suggest that Defendants Racine and Wiseman knew that they were giving Plaintiff the wrong medications. Plaintiff's allegations regarding Defendant Racine lead to the conclusion that Defendant Racine administered the wrong medication accidentally, as she had to check the name and cell number on the cup lid and admitted she "messed up." (Compl., ECF No. 1, PageID.6.) Likewise, there is nothing in the complaint to suggest that Defendant Wiseman intentionally gave

14

Plaintiff the wrong medication. Therefore, nothing in Plaintiff's recitation of facts plausibly suggests that Defendants' administration of the wrong medication was anything but inadvertent error. Such facts cannot support a claim for deliberate indifference. *See Barnett v. Luttrell*, 414 F. App'x 784, 788 (6th Cir. 2011) ("Barnett alleges no facts suggesting that Terrie's incorrect administration of Dilantin was anything other than negligent. It thus constituted medical malpractice at most and cannot constitute an Eighth–Amendment violation."). Further, although Plaintiff alleges he experienced unwanted side effects from the administration of incorrect medications, he alleges no facts to indicate that those side effects constituted a serious medical need, nor are there any allegations that Defendants Racine and Wiseman were deliberately indifferent to those needs. *Estelle*, 429 U.S. at 104–105.

Accordingly, for each of the foregoing reasons, Plaintiff fails to state an Eighth Amendment claim against Defendants Racine and Wiseman.

## IV.    State Law Claims

When setting forth his claims for relief, Plaintiff states that, "defendants are liable to Plaintiff for the state law torts of gross negligence," and "for the state law tort of intentional infliction of emotional distress." (Compl., ECF No. 1, PageID.8–9).

As an initial matter, claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Therefore, Plaintiff's assertion that Defendants violated state law fails to state a claim under § 1983.

Furthermore, in determining whether to retain supplemental jurisdiction over state law claims, "[a] district court should consider the interests of judicial economy and the avoidance of

15

multiplicity of litigation and balance those interests against needlessly deciding state law issues."
*Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)). Here, Plaintiff's federal claims against Defendants James, Racine, and Wiseman will be dismissed, and the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims against Defendants.

### Conclusion

For the foregoing reasons, the Court will drop Defendants Unknown Party #1, Unknown Party #2, and Binner as misjoined pursuant to Rule 21 of the Federal Rules of Civil Procedure. The Court will dismiss Plaintiff's claims against Defendants Unknown Party #1, Unknown Party #2, and Binner without prejudice.

Further, having conducted the review required by the PLRA, the Court determines that Plaintiff's federal claims against remaining Defendants James, Racine, and Wiseman will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's state law claims against Defendants James, Racine, and Wiseman will be dismissed without prejudice because the Court declines to exercise supplemental jurisdiction over such claims. The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons the Court concludes that Plaintiff's claims are properly dismissed, the Court also concludes that any issue Plaintiff might raise on appeal would

16

be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court certifies

that an appeal would not be taken in good faith.

     A judgment consistent with this opinion will be entered.


Dated:   August 7, 2026                   /s/ Paul L. Maloney       
                                                 Paul L. Maloney
                                                   United States District Judge